UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOHNETTE L. MADISON                                                                              PLAINTIFF

v.                                                                              NO. 3:11-CV-00496-CRS-JDM

PATRICK DONAHOE,
UNITED STATES POSTMASTER GENERAL                                             DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion of Defendant Patrick Donahoe, the Postmaster General of the United States Postal Service (hereinafter, the "Postal Service"), to dismiss or, in the alternative, for summary judgment. (DN 28). Plaintiff Johnette L. Madison ("Madison") has filed a response to the Postal Service's motion (DN 33), to which the Postal Service has replied (DN 36). Fully briefed, the matter is now ripe for adjudication. For the reasons set forth below, the court will grant the Postal Service's motion (DN 28).

### I.

The following facts are undisputed.[1] Madison is an African-American female over the age of forty who was formerly employed by the Postal Service at its Main Processing Plant in Louisville, Kentucky. During the course of her employment, Madison filed and participated in several EEO complaints against the Postal Service.

In 1993, Madison suffered an on-the-job injury which affected her left shoulder and required that she be placed on permanent restrictions, including limited hours walking and sitting

---

[1] The factual background is more fully developed in the administrative record. (*See* DN 29).

per day and limitations on lifting, pushing, and pulling. To accommodate these limitations, the Postal Service created a modified rehabilitation position for Madison as a Review Clerk in the Dead Letters Unit. Madison was the only employee in the Dead Letters Unit, and her work area was located within the Manual Letters Unit. Madison held this position until she voluntarily retired from the Postal Service on November 30, 2007.

Madison's claims in this action stem from the Postal Service's March 2007 reconfiguration of the Manual Letters Unit. The reconfiguration was ordered by the Plant Manager as a result of ongoing renovations in the area and as an attempt to increase efficiency in the unit. As a result of the reconfiguration, Madison's work area was moved to the front of the Manual Letters Unit and against the side wall. When Madison returned to work after the reconfiguration was completed, she asked a coworker to move her work area so that her injured left side would not be exposed to passing traffic in the aisle. After being alerted to Madison's repositioning of her work area, Mike Ferrari ("Ferrari"), the Manager of Distribution Operations, returned the work area to its reconfigured position and instructed Madison not to move it. Despite this order, Madison again moved her work area on March 29, 2007. Ferrari then requested that Madison's supervisor, Carolyn Pettus ("Pettus"), conduct a Pre-Disciplinary Interview for Madison's failure to follow instructions and working outside her restrictions by repositioning her work area. As a result of the interview, Pettus requested discipline for Madison in the form of an N–TOL #1 Letter of Warning that was later reduced to a "job discussion." Both Ferrari and Pettus were aware of Madison's medical restrictions at all times relevant to this action.

At some point in March 2007, Madison informed the Postal Service that the reconfigured position of her work area violated her restrictions, and she requested an accommodation.

Madison argued that the placement of her desk was dangerous because she could not see people or equipment moving behind her. Ferrari and a union steward reviewed Madison's restrictions and concluded that the reconfiguration did not violate the restrictions, resulted in a reduced flow of traffic behind Madison's desk, and limited the need for Madison to turn to her injured side. They also noted that Madison had a swivel chair at her work station to alleviate any need to twist and turn her body.

Around that same time, Ferrari also made several changes to Madison's job duties. Ferrari took away a portion of Madison's workload after determining that postal regulations required that a certain type of mail (referred to by the parties as "bank mail" or "write up") be handled in Atlanta. Also, on the instruction of the Plant Manager, Ferrari removed the telephone from Madison's desk because it was determined that Madison did not need a phone to complete her duties.

In early April 2007, Madison was ordered to participate in another Pre-Disciplinary Interview after she moved a sorting rack from one side of her desk to another. Madison was eventually issued an N–TOL #1 Letter of Warning in May 2007 for failing to follow instructions in moving her desk area. The letter of warning was subsequently reduced to an "official job discussion."

As a result of these actions, Madison filed an Equal Employment Opportunity ("EEO") complaint with the Postal Service on June 4, 2007, alleging discrimination on the basis of race, color, gender, age, and disability. Madison also brought claims of retaliation and hostile work environment. A hearing on these allegations was held on May 8, 2008. The Administrative Law Judge who presided over Madison's hearing concluded that no discrimination or retaliation had occurred and entered a Decision and Order on September 25, 2009 dismissing Madison's claims.

Madison appealed the decision to the United States Equal Employment Opportunity Commission, Office of Federal Operations. However, the Office of Federal Operations upheld the administrative law judge's order dismissing Madison's case.

Madison filed this action in September 2011 alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2002(e) *et seq.* for employment discrimination on the basis of race, color, gender, and age discrimination, as well as discrimination based on physical disability. In the complaint, Madison also alleges that she was retaliated against for prior EEO activity and was subjected to a hostile work environment.

**II.**

The court will consider the motion as one for summary judgment because the parties have submitted various exhibits and referred to documents outside of the pleadings. Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the

record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III.

### A. Discrimination Claims

Madison claims that the Postal Service discriminated against her on the basis of her race, national origin, gender, age, and physical disability, in violation of Title VII.[2] A plaintiff alleging discrimination may establish a viable cause of action either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination. *Wilson v. Dana Corp.*, 210 F. Supp. 2d 867, 883 (W.D. Ky. 2002) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).

In order for direct evidence to establish discrimination, "the evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [race, national origin, gender, age, or physical disability], but also that the employer acted on that predisposition." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (quoting *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000)). No inferences must be needed in order to conclude that the challenged employment action was motivated, at least in part, by unlawful means. *Id.*

---

[2] Title VII does not govern claims for discrimination on the basis of physical disability or age. *See* 42 U.S.C. § 2000e–2(a)(1) (making it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"). To the extent that Madison seeks to bring claims for discrimination on these bases, the court will construe her complaint as bringing claims under the Rehabilitation Act, 29 U.S.C § 791 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and we will apply the same analysis to the Title VII claims as we do to the claims brought under the Rehabilitation Act and the ADEA. *See DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (citations omitted).

Madison has not presented any direct evidence of discrimination by the Postal Service. Therefore, discrimination must be established using indirect evidence. When discrimination is alleged and sought to be proven on the basis of indirect evidence, the governing test involves the burden-shifting analysis outlined by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* burden-shifting test, the plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence to survive summary judgment. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390–91 (6th Cir. 2009). To make out a *prima facie* case of discrimination, a plaintiff must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) a person outside the protected class was treated more favorably than her. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). In assessing whether a plaintiff has established a *prima facie* case, "[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Id.*

If the plaintiff is able to establish a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the defendant satisfies this burden, the plaintiff must prove that the legitimate reasons offered by the defendant are merely a pretext for discrimination. *Id.* at 704. Thus, in order to withstand a motion for summary judgment, a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *DiCarlo*, 358 F.3d at 415 (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### 1. Race Discrimination[3]

The parties do not dispute that Madison is a member of a protected class and, thus, satisfies the first prong of her *prima facie case*. The second prong of a *prima facie* case of race discrimination requires Madison to establish that she suffered a "materially adverse" employment action. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). The Sixth Circuit defines a "materially adverse" employment action as

> a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Such a change must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (citations and internal marks omitted).

Madison alleges that the letters of warning she received from the Postal Service were a "step in the progressive disciplinary procedure which could result eventually in [an] employee's termination." (DN 33, p. 6). However, Madison has not offered evidence which establishes that the warning letters actually resulted in a significant change in her employment status. *See Zanders v. Potter*, 223 F. App'x 470, 470 (6th Cir. 2007) (unpublished) (holding that the letter of warning received by a postal employee "could not be considered an adverse employment action

---

[3] Madison appears to have abandoned her claims for discrimination based on age and gender, as Madison's brief only addresses her race and disability discrimination claims. *Mass. Mut. Life v. Watson*, 2013 WL 3427577, *2 (E.D. Ky. July 8, 2013) (citations omitted). Even if this court were to consider those claims, the record is bare of any allegations that Madison's age or gender played any role in the actions of the Postal Service that gave rise to this action.

of the type necessary to establish a *prima facie* case of discrimination" because it "did not result in a loss of position, salary, benefits, or prestige"). Moreover, the evidence in this case indicates that the Postal Service reduced the letters of warning to "official job discussions."

Madison also alleges that her employment status was changed when her work area was reconfigured and a large portion of her job duties were taken away. Yet the record does not establish that these changes had a "significant detrimental effect" on Madison's employment status. *See Freeman v. Potter*, 200 F. App'x 439, 442–43 (6th Cir. 2006) (unpublished) (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). Absent this evidence, Madison cannot establish a *prima facie* case of discrimination on the basis of race or disability.

Even assuming *arguendo* that Madison could establish a *prima facie* case of discrimination, the Postal Service has proffered legitimate, nondiscriminatory reasons for its allegedly adverse employment actions. "This burden is merely one of production, not persuasion; it involves no credibility assessment." *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 429 (6th Cir. 2007) (unpublished) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Postal Service contends that it issued the letters of warning because Madison failed to follow the instructions of her supervisor and violated her medical restrictions by moving her work area. Further, the Postal Service maintains that the processing of "bank mail" or "write up" was taken away from Madison's duties in accordance with Postal Service regulations. The Postal Service contends that because this work was never properly a part of Madison's duties, its removal did not have a significant detrimental effect on Madison's employment.

The burden now shifts to Madison to show that the Postal Service's legitimate, nondiscriminatory reasons are a pretext for discrimination. A plaintiff can prove that an

employer's stated reason for an employment action was pretextual by demonstrating that the reason (1) had no basis in fact, (2) did not actually motivate the employment actions, or (3) was insufficient to motivate the employment actions. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (citation omitted). In determining whether an employer's reasons for an employment action were a pretext for intentional discrimination, the court "may not, however, focus on the soundness of an employer's business judgment." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir. 1986) (citation omitted).

Madison does not dispute that she moved her desk furniture and failed to follow her supervisor's instructions. Moreover, Madison has offered nothing more than her unsupported assertion that the Postal Service had no legitimate business purpose for reconfiguring her work area; she merely denies the Postal Service's allegations. "Disputation of the facts underlying [the defendant's] legitimate business reason . . . is not sufficient to carry [the plaintiff's] burden." *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987). Thus, Madison provides no evidence creating an issue of fact as to whether the Postal Service's enumerated reasons for these allegedly adverse actions were pretextual. As Madison has not met her burden in combating the Postal Service's asserted reason, the court will grant summary judgment in favor of the Postal Service on this claim.

### 2. Disability Discrimination

Madison claims that the Postal Service failed to reasonably accommodate her disability after her work area was reconfigured. A *prima facie* case of disability discrimination requires the plaintiff to demonstrate that: (1) she was disabled; (2) she was otherwise qualified to perform the job requirements, with or without reasonable accommodations; and (3) she was denied a reasonable accommodation solely by reason of her disability. *Peltier v. U.S.*, 388 F.3d 984, 989

(6th Cir. 2004) (citation omitted). The parties do not appear to dispute that Madison was disabled, nor is there a dispute that Madison was otherwise qualified for her position. Accordingly, the dispute centers on whether Madison was denied a reasonable accommodation.

An employer who knows of an employee's physical or mental disability must make reasonable accommodations upon the employee's request. 42 U.S.C. § 12112(b)(5)(A); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998). The Postal Service knew of Madison's physical limitations because it created a rehabilitation position with duties specific to her restrictions. Madison alleges that she requested an accommodation after the reconfiguration, but the Postal Service failed to accommodate her request that her work area be turned around so as not to expose her injured left side to passing foot traffic. Madison suggests that the Postal Service has not demonstrated a reason for failing to accommodate her request, other than a discriminatory animus.

For its part, the Postal Service contends that Ferrari and a union steward reviewed Madison's restrictions and work description and determined that Madison did not require an accommodation. Ferrari and the union steward apparently concluded that the reconfiguration resulted in reduced traffic and movement near Madison's work area. In addition, Madison sat in a swivel chair and could therefore avoid twisting and turning to her injured side.

Accordingly, the court finds that Madison was not denied a reasonable accommodation. Although Madison was afraid that the reconfiguration would expose and possibly injure her left side, the Postal Service provided Madison with a swivel chair and, as the record reflects, the reconfiguration significantly reduced the amount of movement near Madison's work area. There is also no indication that Madison's job description required her to actually see the people and equipment moving behind her, nor was she required to consult with other employees in the

course of her duties. Moreover, Madison testified that by April 2007 she began to sit facing the side wall at her desk hutch and, from that position, was able to see the front of the room and shield her left side from passing traffic.

### B. Retaliation

Madison alleges that the Postal Service retaliated against her for filing grievances and EEO complaints on behalf of herself and others.[4] As with Title VII discrimination claims, retaliation claims based on indirect evidence are analyzed under the burden-shifting framework of *McDonnell Douglas*. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 (6th Cir. 2009) (citing *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009)). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) her employer was aware of the protected activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir 2008).

The Postal Service does not dispute that Madison filed grievances and participated in prior EEO activity, nor does the Postal Service appear to dispute that it was aware of these protected activities. However, the Postal Service argues that Madison was not subjected to an adverse employment action. As we previously stated, the Postal Service's alleged failure to accommodate Madison's disability, the issuance of the letters of warning, the reconfiguration of Madison's unit, and the removal of some of Madison's job duties were not adverse employment actions that resulted in a material change in the terms and conditions of Madison's employment.

Even assuming *arguendo* that they were considered adverse actions, Madison has not offered evidence of a causal connection between the protected activity and the allegedly adverse

---

[4] Madison claims to have been involved in the following cases: Johnette Madison v. John E. Potter, EEOC No. 1C–401–0069–03; Edmond Walker v. John E. Potter, EEOC No. 320–82–83906; Terry D. Bible v. John E. Potter, EEOC No. 470–2007–00093X.

employment actions. To establish a causal connection, the plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)) (internal marks omitted). "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516–517 (6th Cir. 2009).

Madison claims that there is a temporal connection between her representation of fellow Postal Service employee Terry Bible and the Postal Service's allegedly adverse employment actions, but the parties have not disclosed the specific dates of this representation.[5] Even if we assume that the representation occurred close in time to the alleged retaliatory act, there is no indication that the allegedly adverse employment actions were the result of anything other than Madison's own actions in working outside her restrictions and disregarding orders from her supervisors. Thus, Madison has not identified any facts, contested or not, that could serve to establish a causal connection between her prior EEO activity and the actions of the Postal Service in reconfiguring her work area and taking away a portion of her job duties. Consequently, Madison cannot make out a *prima facie* case of retaliation. Even if Madison could make out a *prima facie* case, she has failed to show that the Postal Service's legitimate, nondiscriminatory reasons for its actions are pretext. As such, the Postal Service's motion for summary judgment will be granted as to Madison's retaliation claim.

---

[5] Madison has testified that her representation of Terry Bible occurred approximately three months before the events at issue in this action. (DN 29-2, p. 28:20–23). The Postal Service does not seem to contest this assertion.

### C. Hostile Work Environment

To establish a *prima facie* case of hostile work environment under Title VII, Madison must demonstrate the following: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her status in the protected class; (4) the harassment effectively interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1992) (internal marks and citations omitted). The plaintiff must show that the harassment is both objectively and subjectively severe or pervasive, meaning that a reasonable person would have found the work environment hostile or abusive, and that the plaintiff personally thought the environment to be hostile or abusive. *Id.* at 21–22

In considering whether the alleged harassment was sufficiently "severe or pervasive" to constitute a hostile work environment, the court must examine the totality of the circumstances. *Id.* at 23; *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). The Sixth Circuit has developed several factors for courts to consider, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether [the conduct] unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Madison claims that she was verbally harassed by Ferrari and subjected to the following types of harassment: work assigned in violation of her medical restrictions; over supervision of

her work; and harassment regarding working conditions and assignments. Madison further contends that she was harassed as a result of the reconfiguration of her work area because her "disabled side" was exposed to injury, which caused her to fear for her safety and well-being. For its part, the Postal Service argues that the evidence Madison submitted does not rise to the level of a "severe and pervasive" work environment.

The Sixth Circuit has held that "occasional comments, which may have been 'offensive utterances,' do not rise to the level required" by the Supreme Court to create a hostile work environment. *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008). Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment[.]" *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). The conduct alleged by Madison lasted only from March 2007 through July 2007 and was not sufficiently "severe and pervasive" to rise to this level. Although Madison alleges more than a single instance in which Ferrari supposedly followed her, questioned her about her knowledge of her job duties, and "disciplined" her for moving her work area, the few instances of offensive conduct do not amount to actionable harassment. Moreover, as we previously determined, the Postal Service had legitimate and non-discriminatory reasons for its actions. Taken as a whole, the court is unable to find that Madison has alleged behavior on the part of the Postal Service that made her work environment objectively hostile. Accordingly, the Postal Service is entitled to summary judgment on this claim.

**IV.**

For the reasons stated herein, the Postal Service's motion to dismiss or, in the alternative, for summary judgment (DN 28) is granted, and the claims against the Postal Service for discrimination, retaliation, and hostile work environment are dismissed. A separate order and judgment will be entered in accordance with this Memorandum Opinion.

IT IS SO ORDERED.

March 6, 2014

Charles R. Simpson III, Senior Judge
United States District Court